Citation Nr: 1730442 
Decision Date: 07/02/17 Archive Date: 08/09/17

DOCKET NO. 13-28 128A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for a bilateral knee disorder.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for ischemic heart disease, to include as secondary to herbicide exposure.

4. Entitlement to service connection for diabetes mellitus, type 2, to include as secondary to herbicide exposure.

5. Entitlement to nonservice-connected pension benefits.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

S. Layton, Counsel


INTRODUCTION

The Veteran had active service from May 1962 to May 1964.

These matters come before the Board of Veterans' Appeals (Board) from a November 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan. 

In his substantive appeal, the Veteran requested a hearing before a Veterans Law Judge at the RO. However, in correspondence received in November 2016, the Veteran cancelled his hearing request.

In his original claim submitted in January 2012, the Veteran sought service connection for "Severe Knee problems." He has not specified a specific knee. Construing the claim broadly to give every benefit of the doubt to the Veteran, the Board has considered the claim as being one for a bilateral knee disorder.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for a bilateral knee disorder and diabetes mellitus, type 2, are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran has tinnitus that is etiologically related to a disease, injury or event in service.

2. The Veteran does not have a current diagnosis of ishemic heart disease.

3. The preponderance of the evidence is against finding that the Veteran had active military, naval, or air service during a period of war.


CONCLUSIONS OF LAW

1. Tinnitus was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).

2. The criteria for service connection for ishemic heart disease have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2016).

3. The Veteran does not meet the threshold eligibility requirements for the receipt nonservice-connected pension benefits. 38 U.S.C.A. §§ 101, 1521 (West 2014); 38 C.F.R. §§ 3.1, 3.2, 3.3, 3.6, 3.203, 3.314 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

While the Board must provide reasons and bases supporting a decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on behalf of the Veteran. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence of record. The Veteran should not assume that the Board has overlooked pieces of evidence that are not explicitly discussed. Timberlake v. Gober, 14 Vet. App. 122 (2000).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not given to each piece of evidence contained in the record. Every item of evidence does not have the same probative value. When the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Service Connection

Service connection may be granted for disability caused by disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. § 3.303 (2016). To establish service connection for a disability, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a relationship between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303 (2015); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247 (1999); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2016). If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity for certain diseases. 38 C.F.R. §§ 3.303(a), (b), 3.309(a) (2016); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2016).

When a claimant seeks benefits and the evidence is in relative equipoise, reasonable doubt is resolved in favor of the claimant, and the claimant prevails. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. Alemany v. Brown, 9 Vet. App. 518 (1996). 

Tinnitus

The Veteran's service personnel records reflect that his military occupational specialty was military policeman.

The service treatment notes are negative for any symptoms or complaints of tinnitus. 

On VA compensation and pension examination in November 2012, it was noted that the Veteran reported that the onset of his tinnitus was approximately 12 years ago, or in 2000. It was noted that the Veteran was exposed to firearms and weapon fire while he was on active duty. The examiner opined that the Veteran's tinnitus was less likely than not caused by or a result of military noise exposure. The examiner based his opinion on the Veteran's report that the onset of his tinnitus occurred many years after his separation from the military.

Following careful review of the evidence of record, the Board finds the preponderance of the evidence is against the Veteran's claim of service connection for tinnitus. 

In this regard, the Board notes that there is a lack of credible evidence of pathology during service and for years following separation. As noted above, the service treatment records are negative for tinnitus. Although the Veteran later reported experiencing tinnitus, by his own report, tinnitus did not occur until the year 2000. It appears that the earliest post-service diagnosis of tinnitus was during the November 2012 VA examination. The Veteran has not indicated any other treatment for tinnitus. 

The grant of service connection requires competent evidence to establish a diagnosis and, as in this case, relate the diagnosis to the Veteran's service. Although the evidence record shows a current diagnosis of tinnitus, it does not contain reliable evidence which relates that disability to any injury or disease in service. 

The Board acknowledges that lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent, regardless of lack of contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). However, the Veteran reported to the November 2012 VA examiner that the onset of his tinnitus was about 12 years prior to that examination, or in the year 2000. Additionally, tinnitus was never reported in the service treatment records. Similarly, at the end of the Veteran's service, he affirmatively indicated on a Report of Medical History in February 1964 that he did not have issues with his ears or hearing loss. Indeed, he stated that "I would say that I was in good health." In summary, the Board finds that the negative record at service discharge and in the years following service, along with the November 2012 VA examination report, to be more probative than any other current assertions by the Veteran relating to a possible continuity of symptomatology. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The Board additionally notes that the VA audiologist who conducted the November 2012 examination concluded that the Veteran's tinnitus was less likely as not the result of noise exposure during active duty. The examiner discussed the pertinent evidence. In essence, despite examining the Veteran, obtaining a history from him, and reviewing pertinent service and post-service records, the examiner was unable to link the Veteran's tinnitus to his military service. The audiologist provided a reasoned opinion, based on complete review of the record, interview, and examination. In assigning high probative value to this examiner's conclusions, the Board notes that she had the claims file for review, specifically discussed evidence contained in the claims file, obtained a history from the Veteran, and conducted a complete examination. There is no indication that the VA examiner was not fully aware of the Veteran's past medical history or that either misstated any relevant fact. The Board thus finds the VA examiners' conclusion that the tinnitus is less likely than not related to his service to be of greater probative value than the lay statements from the Veteran. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (noting that factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion); Neives-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

Absent competent and reliable lay or medical evidence relating the Veteran's tinnitus to service, and in consideration of the VA opinion discussed above, the Board concludes that the claim of entitlement to service connection for tinnitus must be denied. The preponderance of the evidence is against the Veteran's claim and the doctrine of reasonable doubt is not applicable in the instant appeal. Gilbert v. Derwinski, 1 Vet. App. 49, 58 (1990); 38 C.F.R. § 3.102.

Ischemic Heart Disease

While the Veteran was on active duty, he served at the Rocky Mountain Arsenal. He has stated that he was exposed to toxic chemicals, including herbicides, during his service there. He asserts that service connection for ischemic heart disease is warranted as secondary to herbicide exposure.

However, the evidence of record does not provide any medical basis for finding that the Veteran is currently diagnosed with ischemic heart disease. None of the VA or private treatment records contain a diagnosis of ischemic heart disease. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

Nothing in the medical evidence shows that the Veteran has exhibited ischemic heart disease at any time during or contemporary to the current appeal period. The Veteran has presented no competent medical evidence to the contrary. In the absence of a clear diagnosis of a current disability, or any abnormality which is attributable to some identifiable disease or injury during service, an award of service connection is not warranted.

The presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). Because there was no actual disability diagnosed at any time since the claim was filed, and there remains no current evidence of the claimed disability, no valid claim for service connection exists. Based on that evidentiary posture, service connection cannot be awarded.

As the preponderance of the evidence is against the claim for service connection for ischemic heart disease, the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Nonservice-Connected Pension Benefits

Pension is payable to a Veteran who served for 90 days or more during a period of war and who is permanently and totally disabled due to nonservice-connected disabilities which are not the result of the Veteran's willful misconduct. 38 U.S.C.A. § 1521 (West 2014).

Basic entitlement to pension exists if a Veteran served in the active military, naval, or air service for 90 days or more during a period of war; or served in the active military, naval, or air service during a period of war and was discharged or released from such service for a service-connected disability; or served in the active military, naval, or air service for a period of 90 consecutive days or more and that period began or ended during a period of war; or served in the active military, naval, or air service for an aggregate of 90 days or more in two or more separate periods of service during more than one period of war. 38 U.S.C.A. § 1521 (j) (West 2014); 38 C.F.R. § 3.3 (a)(3) (2016). 

The Veteran's service separation form documents that he had continuous active service from May 3, 1962 to May 1, 1964. 

For VA purposes, the Korean Conflict wartime era ended on January 31, 1955. 38 U.S.C.A. § 101 (29) (West 2014); 38 C.F.R. § 3.2 (e) (2016). Thus, the Veteran served after that period of war. The Vietnam wartime era began on August 5, 1964, for those Veterans who did not serve in the Republic of Vietnam. That era began on February 28, 1961, for those Veterans who served in the Republic of Vietnam during that period. 38 U.S.C.A. § 101 (33) (West 2014); 38 C.F.R. § 3.2 (i) (2016). 

The Veteran's service separation form shows no foreign or sea service. Additionally, in July 2012, the National Personnel Records Center found that there was no evidence in the Veteran's file to substantiate any service in the Republic of Vietnam. Thus, the Veteran's service ended before the start of the Vietnam era. Because he did not serve in the Republic of Vietnam during service, the Vietnam era did not start for his service until August 5, 1964, after he separated from service.

There is no other evidence tending to establish that the Veteran had qualifying wartime service as required by law. Accordingly, the Board concludes that the Veteran does not have the qualifying service to make him eligible for nonservice-connected pension benefits. Because the Veteran's service does not meet the criteria described, he does not meet the basic eligibility requirements for nonservice-connected pension, and the claim must be denied based upon a lack of entitlement under the law. Sabonis v. Brown, 6 Vet. App. 426 (1994). The Board finds that the preponderance of the evidence is against the claim and the claim must be denied. 38 U.S.C.A. § 5107 (b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for tinnitus is denied.

Entitlement to service connection for ischemic heart disease, to include as secondary to herbicide exposure, is denied.

Entitlement to nonservice-connected pension benefits is denied.


REMAND

Concerning the claim for service connection for a bilateral knee disorder, a September 1962 service treatment record shows that the Veteran was treated for a sore left knee. A small lesion was apparent. He was treated with hot packs and was told to avoid prolonged standing and walking. Post-service, a September 2009 VA treatment record reflects that the Veteran had arthritis in the bilateral knees and that both of his knees were replaced in 2003.

The VA's statutory duty to assist the Veteran includes the duty to conduct a thorough examination so that the evaluation of the claimed disability will be a fully informed one. Green v. Derwinski, 1 Vet. App. 121 (1991); Snuffer v. Gober, 10 Vet. App. 400 (1997). Assistance by VA includes providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A (d) (West 2014); 38 C.F.R. § 3.159 (c)(4) (2016); McLendon v. Nicholson, 20 Vet. App. 79 (2006). When the medical evidence is incomplete, as it is here, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). As there is evidence of an in-service injury and evidence of a current diagnosis of a bilateral knee disorder, the Veteran should be afforded a VA examination for an etiology opinion regarding his bilateral knee disorder.

Concerning the claim for service connection for diabetes mellitus, type 2, a September 2009 VA treatment record reflects that the Veteran was diagnosed with diabetes mellitus, type 2, approximately 10 years previously. 

While the Veteran was on active duty, he served at the Rocky Mountain Arsenal. He has stated that he was exposed to toxic chemicals, including herbicides, during his service there. He has submitted public documents showing that chemical weapons were manufactured at Rocky Mountain Arsenal. These documents also show that the Rocky Mountain Arsenal is a current Superfund Cleanup site. He asserts that service connection for diabetes mellitus, type 2, is warranted as secondary to herbicide exposure.

Service personnel records show that the Veteran was stationed at the Rocky Mountain Arsenal, Colorado, from September 15, 1962, to April 10, 1964.

VA has developed specific procedures to determine whether a Veteran was exposed to herbicides other than in the Republic of Vietnam or along the demilitarized zone (DMZ) in Korea. VA's Adjudication Procedure Manual, M21-1, Part IV, Subpart ii, Chapter 1, Section H, topic 7 (developing claims based on herbicide exposure in other locations), directs that a detailed statement of the claimed herbicide exposure be sent to the Compensation and Pension Service and a review be requested of the inventory of herbicide operations maintained by the Department of Defense to determine whether herbicides were used or tested as alleged. If the exposure is not verified, a request should then be sent to the United States Army and Joint Services Records Research Center for verification. VBA Fast Letter 09-20 (May 6, 2009). The evidentiary development procedures provided in the Adjudication Procedure Manual are binding. Patton v. West, 12 Vet. App. 272 (1999). 

On remand, a detailed statement of the claimed herbicide exposure should be sent to the Compensation and Pension Service for a review of the inventory of herbicide operations maintained by the Department of Defense to determine whether herbicides were used or tested as alleged. 

Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain all VA treatment medical records not already of record. 

2. After obtaining appropriate authorization, obtain any private treatment records identified by the Veteran that are not already of record.

3. Complete the steps outlined in the M21-1 MR, pt. IV, subpt. ii, Ch.1, sec. H, topic 7 concerning verification of exposure to herbicides while the Veteran served at the Rocky Mountain Arsenal. Any additional action necessary for independent verification of exposure to herbicides, to include follow-up action requested by any contacted entity, should be accomplished. If the search for corroborating records leads to negative results, notify the Veteran and allow him the opportunity to respond.

4. Then, schedule the Veteran for a VA orthopedic examination. The examiner must review the claims file and should note that review in the report. All testing deemed necessary should be performed. A complete rationale for all opinions should be provided in the examination report. The examiner should diagnose all orthopedic disabilities of the right and left knee found. 

The examiner should opine for each orthopedic disability of the right and left knee found, whether it is at least as likely as not (50 percent or greater probability) that each disability of the right and left knee was incurred in service or is the result of any incident in service. 

The examiner is specifically asked to consider the September 1962 service treatment record which shows that the Veteran was treated for a sore left knee.

5. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
Jennifer Hwa
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs